IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DA ZHANG, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civ. No. 22-477-GBW |
| BANK OF AMERICA, | ) | |
| Defendant. | ) | |

---

Da Zhang, Newark, Delaware. Pro se Plaintiff.

Geoffrey Graham Grivner, Buchanan Ingersoll & Rooner PC, Wilmington, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

September 18, 2023
Wilmington, Delaware

**WILLIAMS, U.S. District Judge:**

In this action, Plaintiff Da Zhang brings an employment discrimination claim against Defendant Bank of America. (D.I. 2, 5, 6). Before the Court is Bank of America's motion for judgment on the pleadings. (D.I. 18). The matter is fully briefed.

## I. BACKGROUND

In April 2022, Plaintiff, who is Chinese, filed her Complaint, as supplemented in May 2022, bringing claims for employment discrimination based on national origin against Bank of America, her former employer. (D.I. 2, 5, 6).[1] Plaintiff proceeds *pro se* and *in forma pauperis*. (D.I. 4). The Court screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), and allowed Plaintiff's claims against Bank of America to proceed. (D.I. 7).

Bank of America filed an Answer to the Complaint, which included as an exhibit a Confidential Letter Agreement and General Release of Claims (the "Letter Agreement"), dated December 1, 2020, and emailed to Plaintiff the same day. (D.I. 16-1). The Letter Agreement began:

---

[1] Plaintiff also named as defendants one of Bank of America's employees and an entity or person labeled "Deerfield." These individuals were dismissed because individual employees are not liable under Title VII of the Civil Rights Act of 1964, and because there was no indication that Deerfield was Plaintiff's employer. (D.I. 7).

> This Letter Agreement ("Agreement") confirms our recent discussions regarding your employment. As we discussed, your official separation date from Bank of America ("Bank of America" or the "Company") will be December 1, 2020 ("Separation Date"). Given uncertainties in the current environment, Bank of America is offering you the financial and other assistance described below (the "Transition Assistance") as a means to help you transition from Bank of America to your next endeavor.
>
> To receive the Transition Assistance offered, you should sign and return a copy of this Agreement within the time period described below to [redacted]. Because the Agreement contains a General Release of Claims, you are encouraged to review it with an attorney of your choice before signing.

(*Id.* at 1). The Transition Assistance offered by Defendant in the Letter Agreement was submitted under seal, and has been viewed by the Court. The General Release of Claims stated:

> **General Release of Claims/Covenant Not to Sue**. By signing below, you fully waive, release, and forever discharge and also agree not to sue Bank of America and any and all of its officers, directors, employees, assigns, agents, plans and plan trustees, independent contractors, shareholders, attorneys and representatives, jointly and individually, (the "Released Parties") from any manner of suits, actions, or causes of action, including any claim for attorneys' fees or costs, existing at the time you sign the Agreement, whether currently known or unknown, under any possible legal, equitable, contract, tort, or statutory theory. With the exception of those claims set forth in the Exceptions paragraph below, and to the greatest extent permitted by applicable law, this General Release includes, but is not limited to, claims arising out of or in any way related to your employment and/or separation from employment, such as, by way of example only, claims under the federal Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, Section 1981 of Title 42 of the United States Code, the Employee Retirement Income Security Act of 1974, the Americans With Disabilities Act, the Rehabilitation Act of 1973, the Worker Adjustment and Retraining Notification Act, the federal Family and

> Medical Leave Act (FMLA), the federal Equal Pay Act, the Ledbetter Fair Pay Act, and any other federal, state or local statute, ordinance, executive order, regulation, including without limitation any amendments thereto, or any other legal theory.

(*Id.* at 2).

Plaintiff was given 21 calendar days to review and sign the Letter Agreement. (*Id.* at 5).[2] She was also given seven days from the date of signing to "change [her] mind and revoke the Agreement in writing, in which case it [would] not become effective." (*Id.*). The Letter Agreement was governed by North Carolina law. (*Id.*). Plaintiff signed the Letter Agreement on December 4, 2020, over two weeks before the deadline to do so. (*Id.*). Above her signature was the following text:

> **I hereby AFFIRM, ACKNOWLEDGE AND AGREE** that I have read the foregoing Agreement, that I have had sufficient time and opportunity to review and discuss it with the attorney of my choice, that I have had any questions about the Agreement answered to my satisfaction, that I fully understand and appreciate the meaning of each of its terms, and that I am voluntarily signing the Agreement on the date indicated below, intending to be fully and legally bound by its terms.

(*Id.*).

---

[2] Oddly, in the redacted version of the Letter Agreement submitted by Bank of America, some portions of the Letter Agreement upon which Bank of America directly relies in its motion for judgment on the pleadings have been redacted. The Court will order Bank of America to submit a superseding redacted version of the Letter Agreement, removing the redactions from the relevant portions, such as the time given to Plaintiff to sign the Letter Agreement.

Bank of America filed a motion for judgment on the pleadings, arguing that the case must be dismissed because Plaintiff released all claims against it by entering into the Letter Agreement. (D.I. 18, 19). The matter is fully briefed. (D.I. 20, 22-24).

## II. LEGAL STANDARDS

A Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss when the Rule 12(c) motion alleges that the plaintiff failed to state a claim upon which relief can be granted. *See Turbe v. Government of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991); *Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). In ruling on a motion for judgment on the pleadings, the Court is generally limited to the pleadings. *See Mele v. Federal Reserve Bank of N.Y.*, 359 F.3d 251, 257 (3d Cir. 2004). The Court may, however, consider documents incorporated into the pleadings and those that are in the public record. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Under Rule 12(c), a party may move for judgment on the pleadings "[a]fter pleadings are closed – but early enough not to delay trial." When evaluating a defendant's motion for judgment on the pleadings, the Court must accept all factual allegations in a complaint as true and view them in the light most favorable to the non-moving party. *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d

Cir. 2008); *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000). A Rule 12(c) motion will not be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau*, 539 F.3d at 221.

"The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612, 617 (D. Del. 2008); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that any documents integral to pleadings may be considered in connection with Rule 12(c) motion). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Burlington Coat Factory*, 114 F.3d at 1420. Ultimately, a motion for judgment on the pleadings can be granted "only if no relief could be afforded under any set of facts that could be proved." *Turbe*, 938 F.2d at 428.

## III. DISCUSSION

A settlement agreement between two parties to a lawsuit is a form of contract. *Mortellite v. Novartis Crop Protection, Inc.*, 460 F.3d 483, 492 (3d Cir. 2006). Courts are to look to state contract law to resolve disputes over such an agreement. *See id.* As noted, the Letter Agreement contains a clause that it is

governed by North Carolina Law. Defendants argue that the Release meets the requisites under North Carolina law and is valid and enforceable.

"North Carolina courts consistently have upheld and enforced valid release agreements." *VF Jeanswear Ltd. P'ship v. Molina*, 320 F. Supp. 2d 412, 419 (M.D.N.C. 2004). The North Carolina Court of Appeals has explained that:

> A release is a private agreement amongst parties which gives up or abandons a claim or right to the person against whom the claim exists or the right is to be enforced or exercised. . . . A completed compromise and settlement fairly made between persons legally competent to contract and having the authority to do so with respect to the subject matter of the compromise, and supported by sufficient consideration, operates as a merger of, and bars all right to recover on, the claim or right of action included therein, as would a judgment duly entered in an action between said persons.

*Fin. Servs. of Raleigh, Inc. v. Barefoot*, 594 S.E.2d 37, 41 (N.C. Ct. App. 2004) (internal quotation marks and citations omitted). "When a release is executed in exchange for valuable consideration, the release provides a complete defense to an action for damages." *Talton v. Mac Tools, Inc.*, 453 S.E.2d 563, 565 (N.C. Ct. App. 1995). The acceptance of the consideration offered precludes any claim that the release agreement is invalid. *Molina*, 320 F. Supp. 2d at 422. Similarly, Delaware courts recognize the validity of general releases. *See Deuley v. DynCorp. Int'l, Inc.*, 8 A.3d 1156, 1163 (Del. 2010). For enforceability under Delaware law, releases of liability "must be crystal clear and unequivocal" and "unambiguous, not unconscionable, and not against public policy." *Barth v. Blue*

*Diamond, LLD*, 2017 WL 5900949, at *2 (Del. Super. Ct. Nov. 29, 2017) (citation omitted).

It is undisputed that Plaintiff signed the Letter Agreement and received valuable consideration in the form of Transition Assistance in exchange for agreeing to the General Release of Claims. Plaintiff never sought to set aside the Letter Agreement or General Release of Claims. However, in her opposition to Bank of America's motion, a supplement to her opposition, and her sur-reply, she now asserts that she signed the Letter Agreement because she was threatened with losing her job if she did not sign it, she did not understand the terms of Letter Agreement, and she was not aware her rights. (D.I. 20, 21, 24).[3] The response, supplement, and sur-reply are neither sworn to nor verified, and Plaintiff's assertions are generally vague, unconvincing, and lacking in specificity.

Even were this Court to consider Plaintiff's new claims, she proffered no evidence. She did not file an affidavit or declaration that she was coerced or

---

[3] At no time has Plaintiff sought to amend the Complaint to add such allegations. Plaintiff may not amend her Complaint through her opposition brief, and these new facts may not be considered by the Court on the instant motion for judgment on the pleadings. *See, e.g., Commonwealth of Pennsylvania. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

manipulated any way or offer any description of the negotiations which resulted in the Letter Agreement. By signing the Letter Agreement, Plaintiff represented that she had read the Agreement, that she had sufficient time and opportunity to review it and discuss it with an attorney of her choice, that any questions she may have had were answered to her satisfaction, that she fully understood and appreciated the meaning of each term used, that she was voluntarily signing the Agreement, and that she intended to be fully and legal bound by its terms. Furthermore, Plaintiff's employment had already been terminated at the time she signed the Letter Agreement, so her primary assertion that she signed it out of fear of losing her job is not supported by the facts. Finally, Plaintiff was essentially given a month to consult an attorney before signing the Letter Agreement, or it becoming effective, yet she signed it within four days of receiving it. In short, even were the Court to consider Plaintiff's new arguments, she failed to demonstrate any compelling circumstances or provided clear and convincing proof that would warrant invalidating the General Release.

Finally, there is no dispute that Plaintiff's claims in the instant Complaint are barred by the General Release of Claims. As discussed by the United States Court of Appeals for the Third Circuit, "[i]t is hornbook law that employers can require terminated employees to release claims in exchange for benefits to which they would not otherwise be entitled. Nothing in the employment-discrimination

statutes undermines this rule. . . . Title VII . . . claims are [] subject to waiver by terminated employees. *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 (1974) ('[P]resumably an employee may waive his cause of action under Title VII as part of a voluntary settlement[.]'")). A release must be knowingly and voluntarily signed and cannot waive future claims. *Id.* at 450 n.4, n.5. In addition, an employee who signs a release must receive consideration in return. *Id.* at 450 (citations omitted).

As discussed above, Plaintiff knowingly and voluntarily signed the Letter Agreement and received valuable consideration in exchange for her release of claims. The terms of the General Release of Claims are clear and unambiguous and present a sweeping waiver of Plaintiff's employment discrimination claims. Plaintiff released Bank of America from any claims under any federal, state or local law, including, but not limited to, claims arising under Title VII of the Civil Rights Act of 1964, *i.e.*, the claims Plaintiff raises in her Complaint. Finally, there is no indication that Plaintiff was rushed into signing the Letter Agreement given that she opted to sign it well before the deadline to do so.

This Court has viewed the facts presented in the pleadings and drawn the inferences therefrom in the light most favorable to Plaintiff, nonmoving party. In doing so, this Court finds that Bank of America has clearly established that no

material issue of fact remains to be resolved and it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 12(c); *Wolfington v. Reconstructive Orthopaedic Associates, Inc.*, 935 F.3d 187, 195 (3d Cir. 2109). Accordingly, this Court will grant Bank of America's motion for judgment on the pleadings and dismiss Plaintiff's Complaint.[4]

## IV. CONCLUSION

For the reasons discussed above, the Court will grant Bank of America's motion for judgment on the pleadings and dismiss Plaintiff's Complaint.

An appropriate order will be entered.

[4] Plaintiff also filed a request for appointed counsel (D.I. 21), which the court will deny as moot.